# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

JOYCE SUE BAKER, as next of friend to )
R. Staley and B. Staley, minors, )
                                      )
          Plaintiff, )
                                      )
v.                                   )      No.:    3:15-CV-136-TAV-HBG
                                        )
BECKY MORGAN, *et al.*, )
                                      )
          Defendants. )

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court on the Motion for Summary Judgment on Behalf of Donald Van Buren and Becky Morgan, in Their Individual Capacities [Doc. 18], defendant Morgan's Motion to Strike Plaintiff's Sur-Reply or Response to Sur-Reply [Doc. 33], the Motion for Summary Judgment on Behalf of Grainger County, Tennessee [Doc. 35], and plaintiff's Motion to Strike [Doc. 43].

Defendants Van Buren, Morgan, and Grainger County move the Court to dismiss the claims against them because there are no genuine issues of material fact in dispute and, as a matter of law, defendants are entitled to summary judgment [Docs. 18, 35]. Plaintiff filed responses in opposition [Docs. 27, 39], and defendants replied [Docs. 30, 42]. Plaintiff also filed a Supplemental Reply Brief with regard to defendants Morgan and Van Buren's motion [Doc. 32], and defendant Morgan filed a motion to strike the supplemental sur-reply [Doc. 33]. Plaintiff also filed a motion to strike [Doc. 43] the

affidavit of Kenneth Matthews, Jr., M.D. ("Doctor Matthews") [Doc. 42-1], which was filed by Grainger County in support of its reply [Doc. 42].

After careful examination of the record and relevant law, the Court finds summary judgment appropriate on plaintiff's claims made pursuant to § 1983, and it will decline to exercise supplemental jurisdiction over plaintiff's state law claims. The court will, therefore, dismiss this case in its entirety. Additionally, the Court will deny defendant Morgan and plaintiff's motions to strike as moot.

## I.    Background[1]

Robert Keith Staley ("the decedent") was arrested for violation of probation and sent to the Grainger County Detention Center on March 25, 2014 [Doc. 1 ¶ 9; Doc. 12 ¶ 1]. The following day, on March 28, 2014, the decedent met with defendant Becky Morgan ("Nurse Morgan"), based on his representation to her that he was "detoxing off of morphine" [Doc. 18-2 ¶ 3].[2]  Nurse Morgan knew that the decedent was a drug addict because he had been imprisoned at the Grainger County jail before, and she had previously treated him for detox symptoms [*Id.* ¶ 4]. On this occasion, Nurse Morgan provided the decedent with Librium and Phenergan, for his anxiety and nausea, respectively [*Id.* ¶ 3].

---

[1] The Court will only include facts necessary to its analysis of plaintiff's claims against defendants Morgan and Grainger County, as plaintiff has admitted that the Court should dismiss her claims again Van Buren [Doc. 27 ¶ 3].

[2] Nurse Morgan is a Licensed Practical Nurse, licensed by the state of Tennessee [Doc. 18-2 ¶ 2].

On March 29, 2014, at 1:15 p.m., inmates in the decedent's cell reported that he "wasn't doing so good" [Doc. 18-1 ¶ 5]. Defendant Van Buren, as the on-duty supervising correctional officer, immediately responded [*Id.* ¶¶ 3, 5]. He found the decedent lying on his bunk, pale, breathing heavily, and in a dizzy and confused state [*Id.* ¶ 5]. Van Buren took the decedent's vital signs [*Id.*], and he contacted Nurse Morgan at around 1:18 p.m. to obtain her advice and instruction [*Id.* ¶ 6; Doc. 18-4 ¶ 6]. Van Buren relayed to Nurse Morgan that the decedent was "about to pass out" and reported his vital signs [Doc. 18-2 ¶ 5]. Nurse Morgan deduced that the decedent was experiencing morphine withdrawals, due to her knowledge of the decedent's substance abuse issues, her previous conversations with the decedent with regard to his addiction and withdrawals, and the decedent's current symptoms [*Id.*]. Consequently, consistent with protocols established by the jail physician, Nurse Morgan instructed Van Buren to administer the decedent a detox pack, consisting of three Dilantin—to prevent seizures— and one Librium [*Id.*; Doc. 18-1 ¶ 6]. Van Buren immediately gave the decedent a detox pack, according to Nurse Morgan's instructions, and suggested that the decedent lie down on his bunk [*Id.* ¶ 7; Doc. 18-2 ¶ 6].

By 5:20 p.m., the decedent could not walk to the restroom without assistance, and he had trouble answering Van Buren's questions [Doc. 18-1 ¶ 8]. Van Buren believed that the decedent was under the influence of drugs, and at no time did Van Buren believe that the decedent was experiencing a medical emergency [*Id.* ¶¶ 8, 14]. He thereafter called his supervisor at 5:48 p.m., who told Van Buren to place the decedent on medical

3

watch [*Id.* ¶ 9; Doc. 18-4 ¶ 7].[3]  Van Buren called Nurse Morgan a few minutes later to update her on the decedent's condition [Doc. 18-4 ¶ 8].  He advised Nurse Morgan that the decedent had been placed on medical watch and "appeared to be stoned and not detoxing" [Doc. 18-1 ¶ 10; Doc. 18-2 ¶ 6].  Van Buren told Nurse Morgan that the decedent had denied having taken drugs since arriving at the jail [Doc. 18-2 ¶ 6].  At approximately 6:00 p.m., Van Buren took the decedent to the intake area so that he could be more closely monitored [Doc. 18-1 ¶ 11].  Van Buren's shift ended at 7:00 p.m., and he updated the incoming officer, Sergeant Nichols, on the decedent's condition [*Id.* ¶¶ 12–13].

At 7:38 p.m., Sergeant Nichols called Nurse Morgan and requested that she come to the jail [Doc. 18-2 ¶ 7; Doc. 18-4 ¶ 10].  He told Nurse Morgan that the decedent had admitted to taking some drugs earlier that day [Doc. 18-2 ¶ 7].  Sergeant Nichols told Nurse Morgan that the decedent was now in "rough shape" and that he believed the decedent would aspirate if given more liquids in an attempt to obtain a urine sample [*Id.*].  Nurse Morgan responded that the decedent needed to go to the hospital, and the officer expressed his desire for Nurse Morgan to evaluate the decedent first, "to see if he was putting on or if he really had a problem that needed to be addressed" [*Id.*].  Nurse Morgan told Sergeant Nichols that she would be at the jail in twenty minutes [*Id.*].

Fifteen minutes later, at approximately 7:55 p.m., Nurse Morgan arrived at the jail and immediately went to check on the decedent [*Id.* ¶ 8].  She took his vital signs and

---

[3] "Medical watch" consists of correctional officers checking on the inmate every fifteen minutes [Doc. 20 p. 8].

4

observed that the decedent was confused but oriented to location and staff members' names [*Id.* ¶ 9]. Based upon her assessment, Nurse Morgan believed that the decedent was intoxicated [*Id.*]. He admitted to having taken Opana and two other pain pills [*Id.*]. Nurse Morgan determined that the decedent should be transported to the hospital but that emergency transportation would not be necessary [*Id.*]. Around this time, the decedent voided six times [*Id.*]. Arrangements were made to transport the decedent by county vehicle [*Id.* ¶ 9]. Nurse Morgan took his vital signs repeatedly while waiting for transportation [*Id.* ¶ 10]. The decedent was taken to the Jefferson Memorial Hospital ("Jefferson") at approximately 9:13 p.m., at which time he was stable and was able to walk to the cruiser [*Id.* ¶ 11].

The decedent arrived at Jefferson around 9:50 p.m. [Doc. 18-3 p. 4]. A computed tomography ("CT") scan was performed, and it showed no evidence of acute intracranial hemorrhage [*Id.* at 12]. The decedent was declared "clinically intoxicated" by medical professionals, and records indicate that the decedent admitted to taking Suboxone [*Id.* at 3–5].[4] A "stash" of drugs was found in his underwear [*Id.* at 3]. A neurological evaluation noted that the decedent was oriented as to person, place, and situation, but not to time [*Id.*]. His memory and cranial nerves were normal [*Id.*]. Physicians at Jefferson diagnosed the decedent in the following manner: "Encephalopathy, Cerebrovascular

---

[4] As noted by plaintiff and admitted by defendants Morgan and Van Buren, however, Jefferson records note that the decedent tested negative for all drugs other than benzodiazepines [Doc. 18-3 p. 11; Doc. 28 ¶ 19; Doc. 31 ¶ 29]. Librium, which was administered to the decedent by jail personnel, is a type of benzodiazepine [Doc. 28 ¶ 20; Doc. 29-1; Doc. 31 ¶ 30]. According to Jefferson records, this method of drug testing "should be used only as a medical screen" and is "not for legal . . . purposes" [Doc. 18-3 p. 11].

5

Accident (CVA)—possible, Drug Overdose—Substance Abuse, Endocarditis—possible, Fever, positive troponin" [*Id.* at 4]. Medical professionals ordered a transfer of the decedent to Physician Regional Medical Center in Knoxville on March 30, 2014 [*Id.*]. He died one month later, on April 30, 2014 [Doc. 1 p. 1; Doc. 19 ¶ 26].

A certified physician assistant commissioned by plaintiff, Logan Hyatt, states that "[a] number of clinical entities may bring about a change in mental status, therefore these patients should be evaluated as soon as possible" [Doc. 29-4 p. 1].[5] Mr. Hyatt goes on to assert that "[a] past history of substance abuse although considered in one's initial assessment should not become an assumption that leads to the excusion [sic] of a more thorough differential diagnosis" [*Id.*]. According to Mr. Hyatt, "[t]he standard practice/goal of present day stroke treatment is that they receive evaluation and initiation of antithrombotic therapy within 3 hours of a change in mental status" [*Id.*]. He admits, however, that the decedent "would go on to receive reasonable and appropriate care" prior to his death on April 30, 2014 [*Id.* at 1–2]. Importantly, Mr. Hyatt notes that the decedent's death resulted from an "ongoing process that occurred over time despite appropriate and aggressive treatment" [*Id.* at 2]. Thus, "the although seemingly unreasonable delay (of about 10 hours) in [the decedent's] professional evaluation at a hospital facility . . . cannot objectively in [Mr. Hyatt's] opinion be linked ultimately to his death" [*Id.*].

---

[5] Mr. Hyatt received a request from plaintiff's counsel to review the record in this case, including communications within the Grainger County Detention Facility, the decedent's medical records, and the decedent's death certificate [Doc. 29-4]. He sets forth his conclusions in a letter, which has been submitted to the Court [*Id.*].

The current suit was filed by the decedent's mother, Joyce Sue Baker, on March 29, 2015, as next friend of the decedent's two minor children [Doc. 1]. Plaintiff asserts that the decedent "suffered a stroke or aneurysm which went undiagnosed and untreated" [*Id.*]. She consequently brings the following claims against Grainger County, Nurse Morgan, Van Buren, and other unidentified individuals: (1) deliberate indifference under the Eighth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983; (2) failure to provide adequate medical care, under the Eighth and Fourteenth Amendments, pursuant to § 1983; (3) negligence under the Tennessee Governmental Tort Liability Act ("TGTLA"); and (4) wrongful death under Tennessee state law [*Id.* at 4–12].

## II.    Motions for Summary Judgment

All named defendants now move the Court for summary judgment on plaintiff's claims. Defendants Morgan and Van Buren argue that they are entitled to judgment as a matter of law as to plaintiff's § 1983 claims because they were not deliberately indifferent to any serious medical need of the decedent [Doc. 18 p. 1]. Plaintiff responded in opposition to defendants Morgan and Van Buren's motion for summary judgment [Doc. 27], in which she asserts that defendant Morgan is not entitled to qualified immunity because she "arguably was deliberately indifferent to a serious medical need of the decedent" [*Id.* ¶ 1]. Plaintiff concedes, however, that her claims against defendant Van Buren should be dismissed because plaintiff "is without sufficient information to deny that Mr. Van Buren is entitled to qualified immunity" [*Id.* ¶ 3]. In its later-filed motion for summary judgment [Doc. 35], Grainger County argues that it is also

entitled to summary dismissal, primarily because there was no underlying constitutional violation by Nurse Morgan [*Id.* at 1].[6]

The Court, after setting forth the relevant standard of review, will proceed by evaluating plaintiff's § 1983 claims against Nurse Morgan and Grainger County, and it will then address plaintiff's state law claims.

## A.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations."  *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317).  To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the

---

[6] Grainger County only addresses its potential liability in connection with Nurse Morgan's actions, as plaintiff conceded that she has no claims against Van Buren [Doc. 36 p. 1].

record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### B.     Section 1983 Claim Against Nurse Morgan

Plaintiff asserts claims against defendant Morgan for deliberate indifference under the Eighth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 [Doc. 1].[7] Defendant Morgan argues that plaintiff's claim should be dismissed because she was not deliberately indifferent to a serious medical need of the decedent and is, therefore, entitled to qualified immunity [Doc. 18 p. 1].

---

[7] Although plaintiff presents deliberate indifference and failure to provide adequate medical care as two separate causes of action, they essentially amount to the same claim, and the Court will, therefore, address them as one cause of action.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted); *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001), *abrogated in part*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity is an affirmative defense,[8] and once raised, the plaintiff must show that the official violated a right so clearly established that a "reasonable official would have understood that what he [was] doing violate[d] that right." *Al-Kidd*, 563 U.S. at 741 (internal citation and quotations omitted). The plaintiff bears the ultimate burden of proof, *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (citation omitted), and if the plaintiff fails to carry her burden as to either element of the qualified-immunity analysis, then the official is immune from suit, *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

### 1. Deliberate Indifference Law

As part of its prohibition of "cruel and unusual punishments," the Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In short, officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eighth Amendment prohibition against

---

[8] Defendants Morgan and Van Buren pleaded qualified immunity in their answer [Doc. 12 ¶ 42].

mistreatment only arises, however, if it is tantamount to "punishment," and courts have consequently imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Therefore, a prison official's "deliberate indifference" to a "substantial risk of serious harm" to an inmate violates the Eighth Amendment. *Farmer*, 511 U.S. at 828. "Pretrial detainees are analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment." *Horn*, 22 F.3d at 660 (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

The Supreme Court has established that "deliberate indifference" in this context is equivalent to a criminal recklessness standard. *See Farmer*, 511 U.S. at 829 (explaining that the official must have been subjectively aware of the risk to the inmate in order to have been deliberately indifferent); *Perez v. Oakland Cty.*, 466 F.3d 416, 423 (6th Cir. 2006) ("Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference."). It is not necessary, however, for the plaintiff to demonstrate that the official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Thus, "deliberate indifference" has both an objective and a subjective component. *Perez*, 466 F.3d at 423–

24; *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Perez*, 466 F.3d at 423–24; *see Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (stating that a plaintiff must produce evidence showing "that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk").

With regard to the objective component, and thereby what qualifies as a "substantial risk of serious harm," the Sixth Circuit has repeatedly held that only inmates' serious medical needs mandate attention under the Eighth Amendment. *Perez*, 466 F.3d at 423. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004); *see Perez*, 466 F.3d at 423–24 ("In cases involving an inmate's medical needs, the need 'must be, objectively, sufficiently serious.'" (quoting *Farmer*, 511 U.S. at 834)).

"An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). If the plaintiff cannot establish the detrimental effect of delay in

12

treatment, then she fails to satisfy the objective prong under *Perez*. 466 F.3d at 423–24; *see also Doe v. Sullivan Cty.*, 956 F.2d 545, 550 (6th Cir. 1992), *cert. denied*, 506 U.S. 864 (1992) (holding that proximate causation is an essential element of a § 1983 claim for damages).

As to the subjective component, courts should analyze this prong "in light of the prison authorities' current attitudes and conduct." *Smith v. Cty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012); *see Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (finding that the subjective prong requires that an official possessed "a sufficiently culpable state of mind in denying medical care"). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If the inmate received "grossly inadequate care" accompanying "a decision to take an easier but less efficacious course of treatment," however, this may amount to deliberate indifference. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). In order to qualify as "grossly inadequate care," the medical treatment must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

## 2.     Application

Here, based on the record before the Court and relevant case law described herein, the Court finds that Nurse Morgan did not violate the decedent's constitutional rights under the Eighth and Fourteenth Amendments.

First, plaintiff has failed to establish the objective component required for a deliberate indifference claim, as plaintiff has not provided any evidence to support that the delay in medical treatment—or inadequacy of medical treatment—had a detrimental effect.  *See Napier*, 238 F.3d at 742 (determining that a plaintiff fails to satisfy the objective prong of deliberate indifference if she cannot establish the detrimental effect of delay).  The decedent did not pass away until a month after the alleged deprivation of treatment, and even plaintiff's submitted testimony of a physician assistant concedes that the alleged delay in medical attention "cannot objectively . . . be linked ultimately to [the decedent's] death" [Doc. 29-4 p. 2].  Thus, plaintiff has not raised a question of fact as to whether the decedent suffered a sufficiently serious medical emergency.

In making this determination, the Court finds its opinion in *Seiber v. Anderson County*, No. 3:11–CV–108, 2011 WL 6258446, at *4 (Dec. 14, 2011 E.D. Tenn.) instructive.  In *Seiber*, this Court determined that the plaintiff met the objective prong of deliberate indifference by presenting evidence that the deceased was diagnosed with melanoma while imprisoned—after prison officials refused to allow him to see a surgeon for nearly a year—and that the deceased ultimately died as result of stage four metastic melanoma, which went untreated for approximately nine months.  *Id.* at *1–4.  Here, in

14

contrast, the deceased was not definitively diagnosed upon his hospitalization, and plaintiff has presented no evidence that the decedent died from the ailments he suffered while incarcerated.

As to the subjective component, although Nurse Morgan was aware of some facts from which the inference could potentially be drawn that a substantial risk of serious harm existed, she was also aware of facts pointing to a less-than-serious condition, and plaintiff has presented no evidence that Morgan actually drew an inference of substantial risk. *See Perez*, 466 F.3d at 423–24. Thus, the subjective prong has not been met in this case because a reasonable juror could not conclude that Nurse Morgan disregarded a risk of substantial harm.

Nurse Morgan's attitude and conduct on March 29, 2014, reflect this conclusion. *See Smith*, 505 F. App'x at 532 (asserting that officials' present attitude and behavior should be taken into account when considering their subjective intentions). Nurse Morgan had reason to believe that the decedent was detoxing from morphine, and she treated him based on this deduction. Once she was informed that the decedent appeared to be intoxicated and that his condition had worsened, Nurse Morgan reasonably reacted by assessing him in person and arranging for his transport to a hospital. The Court concludes that these steps demonstrate Nurse Morgan's subjective interpretation of the decedent's condition as less than critical for the majority of March 29, and her actions appear to have been reasonable medical treatment under the circumstances. Based on the record before the Court, Nurse Morgan did not possess a "sufficiently culpable state of

15

mind" in denying the medical treatment that plaintiff claims was necessary. *See Miller*, 408 F.3d at 813.

Additionally, the decedent in this case did receive medical treatment, and this Court is reluctant to "second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5. Although plaintiff alleges that the care was inadequate, the Court finds that Nurse Morgan's care was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Terrance*, 286 F.3d at 844.

Thus, Nurse Morgan is entitled to qualified immunity on plaintiff's deliberate indifference claim brought pursuant to § 1983 because she did not violate the decedent's constitutional rights, *see al-Kidd*, 563 U.S. at 73, and the Court need not proceed to the second prong of the qualified immunity analysis—whether the right was "clearly established at the time of the challenged conduct." *Id.* Nurse Morgan was not deliberately indifferent to a "substantial risk of serious harm," and her behavior did not rise to the level of criminal recklessness. *Farmer*, 511 U.S. at 828–29. Consequently, qualified immunity applies, and there is no genuine issue of material fact as to plaintiff's claims against Nurse Morgan under § 1983. *See Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005). Nurse Morgan is, therefore, entitled to judgment as a matter of law on plaintiff's § 1983 claims.

## C.     Section 1983 Claim Against Grainger County

In order to state a claim for municipal liability under § 1983, a plaintiff must first demonstrate that there was an underlying constitutional violation. *See City of L.A. v. Heller*, 475 U.S. 796, 808 (1986) (holding that a claim against a municipality for inadequate training and supervision under § 1983 cannot be maintained when there has been no underlying constitutional violation). As discussed herein, the Court finds that Nurse Morgan did not violate the decedent's constitutional rights, in that she was not deliberately indifferent to a serious medical need of the decedent. Thus, the Court need not proceed further in its analysis of plaintiff's municipal liability claims or evaluate the policy or practices of Grainger County. Grainger County is, therefore, entitled to summary judgment as to these claims, and plaintiff's claims brought pursuant to § 1983 against Grainger County will also be dismissed.

## D.     State Law Claims

Plaintiff also asserts negligence and wrongful death claims under Tennessee law [Doc. 1 pp. 11–12]. Defendants argue that they are entitled to summary judgment on these claims because plaintiff failed to comply with the requirements of Tennessee Code Annotated §§ 29-26-121 and 29-26-122 [Doc. 18 p. 1; Doc. 35 p. 2].

While the Court has broad discretion under 28 U.S.C. § 1367(c)(3) to dismiss or to retain jurisdiction over pendent state-law claims under the circumstances presented by this case, "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment." *Brandenburg v.*

*Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001); *see, e.g.*, *Jackson v. Town of Caryville*, Nos. 3:10-CV-153, 3:10-CV-240, 2011 WL 5143057, at *10 (E.D. Tenn. Oct. 28, 2011). Having found, as stated herein, that the federal claims should be dismissed on defendants' motions for summary judgment, pursuant to § 1367(c), and in the exercise of its discretion and in the interests of comity, the Court will decline to exercise continuing "pendent" or supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26 (1966).

Accordingly, the Court will not grant summary judgment in defendants' favor on the state-law claims, and it rather will dismiss those claims for lack of jurisdiction.

## III. Motions to Strike

Defendant Morgan also moves the Court to strike [Doc. 33] plaintiff's supplemental reply brief [Doc. 32], and plaintiff moves the Court to strike [Doc. 43] the affidavit of Doctor Matthews, submitted by defendant Grainger County in support of its reply [Doc. 42-1].

The supplement filed by plaintiff predominately relates to plaintiff's contention that Nurse Morgan "acted outside the scope of her limited license and did breach her limited license" [Doc. 32 p. 1], and the affidavit of Doctor Matthews largely rebuts this contention [Doc. 42-1]. The Court neither needs to consider the supplemental brief and the affidavit of Doctor Matthews to come to its conclusion, nor would the documents alter the Court's conclusion that there is no genuine issue of material fact that precludes summary judgment in defendants' favor. Consequently, the Court will deny as moot

18

defendant Morgan's motion to strike the supplemental reply brief [Doc. 33] and plaintiff's motion to strike the affidavit of Doctor Matthews [Doc. 43].

## IV. *Sua Sponte* **Dismissal of John Doe Defendants**

Finally, the Court raises *sua sponte* the statute of limitations as it relates to the John Doe defendants. The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Tennessee's statute of limitations for personal injury claims and for claims brought under federal civil rights statutes such as § 1983 is one year. *See* Tenn. Code Ann. § 28–3–104(a); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). The statute of limitations generally begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 307 (6th Cir. 2010) (quoting *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). The Court looks "to what event should have alerted the typical lay person to protect his or her rights." *Eidson*, 510 F.3d at 635 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

The decedent received allegedly inadequate medical attention on March 29, 2014, nearly three years prior to the issuing of this opinion. The naming of John Doe defendants in plaintiff's March 29, 2015, complaint does not stop the statute of limitations from running or toll the limitations period as to those defendants. *See Cross*

*v. City of Detroit*, No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008) (citing *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3rd Cir. 2003)). Plaintiff has not attempted to amend her complaint to name the John Doe defendants, and the Court will dismiss *sua sponte*, with prejudice, plaintiff's claims against the John Doe defendants. *See id.* (dismissing *sua sponte* and with prejudice the plaintiff's claim against John Doe police officer for civil rights violations because the plaintiff "did not seek leave to amend the Complaint to name the John Doe defendant prior to the expiration of the statute of limitations"); *see also Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that Rule 15(c) of the Federal Rules of Civil Procedure offers no remedy when, like here, plaintiff "simply did not know whom to sue or opted not to find out within the limitations period" and "waited until the last day of the . . . limitations period to file his complaint, [which] left no time to discover the identity of his arresting officers within the relevant time"); *Eady v. Young*, No. 4:12-CV-28, 2013 WL 11328159, at *4 (E.D. Tenn. Feb. 6, 2013) (stating that Rule 15(c) allows relation back for the mistaken identification of defendants, not for "John Doe" defendants).

## V.    Conclusion

For the reasons explained, the Court will **GRANT in part** and **DENY in part** defendants' motions for summary judgment [Docs. 18, 35], in that it will grant defendants summary judgment on plaintiff's § 1983 claims and will not grant summary judgment in defendants' favor on the state-law claims—but will instead dismiss

20

plaintiff's state law claims for lack of jurisdiction.  The Court will also **DENY as moot**

defendant's Motion to Strike [Doc. 33] and plaintiff's Motion to Strike [Doc. 43].

Furthermore, the Court will **DISMISS** plaintiff's claims against the John Doe defendants.

The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

      ORDER ACCORDINGLY.


               s/ Thomas A. Varlan
               CHIEF UNITED STATES DISTRICT JUDGE